**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| 1. CHRISTY BAILEY, Personal Representative of the Estate of Jeffrey Peterson, <br><br> Plaintiff, <br><br> v. <br><br> 1. CITY OF ADA; and <br> 2. OFFICER MARCUS BEALE, <br> 3. OFFICER JUSSELY CANADA, <br> 4. OFFICER MICHAEL MEEKS, and <br> 5. OFFICER PHILLIP VOGT, <br> Defendants. | ) ) ) ) ) ) ) ) No. 20-CV-__327-SPS__ ) ) ) ) ) ) ) ) |

## COMPLAINT

NOW COMES the Plaintiff, CHRISTY LESHELLE BAILEY, as Administrator of the Estate of Jeffrey Peterson, by and through counsel, THE LAW OFFICE OF JARRETT ADAMS, PLLC, SHILLER PREYAR JARARD & SAMUELS, and MATTINGLY & ROSELIUS, PLLC, and complaining of the defendants, CITY OF ADA and OFFICERS MARCUS BEALE, JUSSELY CANADA, MICHAEL MEEKS, and PHILLIP VOGT, states as follows:

### JURISDICTION

1. This action is brought pursuant to the Civil Rights Act, 42 U.S.C. § 1983, *Monell v. N.Y. Dep't of Soc. Servs.,* 436 U.S. 658 (1978), and the First, Fourth, and Fourteenth Amendments to the United States Constitution.

2. The jurisdiction of this Court is invoked pursuant to the judicial code 28 U.S.C. § 1331 and 1343 (a), and the Constitution of the United States.

3. Pendent jurisdiction is provided under 28 U.S.C. § 1367(a).

## PARTIES

4. JEFFREY "GARRETT" PETERSON was just 29 years old when he died at the hands of Ada Police officers. After graduating from high school, he joined the Job Corp where he studied computer science before joining PepsiCo in their Ada Plant. Garrett loved to eat and play video games when he was not in the river fishing. He was the firstborn child and grandchild on both sides of his large and loving family.

5. Plaintiff, CHRISTY BAILEY, is the administrator of the estate of the decedent, Jeffrey Peterson, and brings this action on behalf of the decedent and herself for loss of the parent-child relationship. Letters of Administration were granted to Ms. Bailey by the Pontotoc County District Court for the State of Oklahoma, establishing her as the personal representative of the estate of Jeffrey Peterson.

6. Defendants MARCUS BEALE, JUSSELY CANADA, MICHAEL MEEKS, and PHILLIP VOGT ("Defendant Officers") were, at the time of this occurrence, duly licensed Ada Police Officers. They engaged in the conduct complained of in the course and scope of their employment and under color of law. They are sued in their official and individual capacities.

7. Defendant CITY OF ADA ("City") is a municipal corporation duly incorporated under the laws of the State of Oklahoma and is the employer and principal of the Defendant Officers.

## ADMINISTRATIVE PREREQUISITES

8. On 6 January 2020, Plaintiff filed a notice of claim with the City of Ada related to the murder of Jeffrey Peterson at the hands of its police department. As of this filing, there has been no response from the Defendant.

9. This case does not relate to any previously filed case in this Court.

## FACTS

10. At or around 9:45 am, on or around 21 September 2019, in order to avoid a confrontation, Garrett asked Megan Timms to move out.

11. That person called police, alleging some of her belongings were still inside Garrett's apartment.

12. Defendant Beale arrived at the 900 block of Arlington Street in Ada, Oklahoma shortly before 10:00 a.m. Upon his arrival, Timms complained that Garret had evicted her from a nearby apartment and still had her personal property.

13. Defendant Beale knew, or should have known, that person did not have a right to authorize entry into Garret's property. Defendant Beale asked Timms to open the door of the property she had just been asked to leave.

14. Defendant Beale did not identify himself as a police officer or ask Garrett for permission to enter the premises.

15. No warrant or exigent circumstances permitting the entry existed.

16. When Garrett noticed his door being opened, he lawfully tried to and did in fact close and lock his door.

17. At that time, Defendant Beale allegedly identified himself as a police officer and asked for the woman's property.

18. Garrett agreed to bag all of her things and leave it for her outside. While Garrett was gathering the person's belongings Defendant Beale continued to beat on Garrett's door and made efforts to force his way into Mr. Peterson's apartment. Defendant Beale's physical efforts were accompanied by verbal threats that have no basis in law. At this

point in time Defendant Beale did not have a warrant, consent, or any other lawful basis to enter Mr. Peterson's home.

19. Garrett made it clear that neither the former occupant nor Defendant Beale were welcome in his home. Garrett did not consent. Garrett asserted his Constitutional right to refuse entry into his home. And at no point did Garrett waive that right.

20. Because of Defendant Beale's actions, Garrett was trapped in his own home. He could not freely leave this encounter, even in the sanctity of his own property, and was therefore seized in violation of his Fourth Amendment Rights.

21. With Defendant Beale still outside of Garrett's home, Garrett called 911 to report that a police officer was trying to break into his house. Garrett requested help from the police to stop the unlawful actions of another police officer.

22. Garrett's call to police and his report of the situation is speech protected by the First and Fourteenth Amendments.

23. Defendants were infuriated by Garrett's exercise of his First, Fourth, and Fourteenth Amendment rights. Rather than recognizing and respecting Garrett's Constitutional rights, Defendant Officers escalated their nature of their unlawful activity.

24. Defendant Beale drew his gun and called for backup; Defendant Canada was the first officer to respond on scene.

25. As soon as Defendant Canada arrived on scene, she drew her gun.

26. When Garrett peeked out the door to see what was happening, Defendants Canada and Beale pointed their weapons at him.

27. The pointing of a weapon at a person who poses no threat constitutes an excessive and unreasonable use of force. The officers, having no justifiable reason for aiming their

weapons at Garrett, were doing so solely because Garrett was not obeying the police officers' unlawful commands.

28. At all times relevant, Garrett was unarmed and posed no threat of serious bodily harm to the defendants. All he wanted was to be left alone.

29. Defendant Beale's own actions demonstrate the non-threatening nature of Garrett. Defendant Beale sat his gun down on the railing outside Mr. Peterson's apartment and left it there for the remainder of the incident.

30. Despite this, Defendants used excessive force against Garrett in violation of Garrett's Eighth Amendment rights.

31. Defendant Canada and Defendant Beale were joined by Defendant Meeks, and later Defendant Vogt.

32. Defendant Canada told Defendants Meeks and Beal that as soon as she got through the door, she planned on tasering Garrett.

33. Neither Defendant Meeks nor Defendant Beal argued against the planned use of force upon the forcible unlawful entry.

34. Defendant Meeks then began pushing Defendant Beale in the back, enabling Defendant Beale to break through Garrett's door.

35. Unarmed, Defendant Beale proceeded first into the apartment and immediately told Garrett, "You done fucked up now" and then told Defendant Canada to "tase this motherfucker."

36. Defendant Beale had immediately tackled Garrett, failing to provide Garrett with an opportunity to comply with the unlawful arrest the Defendant Officers had now initiated.

37. Defendant Canada made no attempt to actually arrest Garrett and instead tasered him repeatedly.

38. When Defendants Beale and Meeks had Garrett's hands out and Defendant Meeks instructed Defendant Vogt, who by this time had arrived on scene, to "cuff him," Defendant Canada instead ordered Defendant Vogt to step back so she could continue to taser Garrett.

39. Defendant Canada tasered Garrett repeatedly, including holding down her trigger so the cycle would last longer. The taser was a form of punishment, not restraint. It was used in a vindictive manner and with such utter disregard that Defendant Canada even tasered Defendant Beale.

40. Defendants Beale and Meeks yelled for Defendant Canada to stop deploying her taser and instead help with the cuffing.

41. After untangling himself from Defendant Canada's taser wires, Defendant Beale then attempted to taser Garrett himself.

42. Defendant Canada picked up Defendant Vogt's weapon, which had fallen to the floor, and passed it to Defendant Beale.

43. Defendant Beale then decided to kill Garret.

44. At that time, Garrett was sandwiched between Defendants Vogt and Meek; Defendant Vogt had Garrett's left arm and Defendant Meeks had Garrett's right arm. Garrett was not a threat to Defendants, and at this moment he was more restrained and vulnerable than at any moment of the encounter.

45. Defendant Vogt had his handcuffs out and was about to handcuff Garrett but instead Defendant Beale told everyone to step back so he could shoot Garrett.

46. None of the other Defendants made any effort to discourage or prevent Defendant Beale from using lethal force at this moment.

47. Instead, Defendant Vogt stepped out of the way, and Defendant Beale shot Garrett three times.

48. As a direct and proximate result of the Defendant Officers' unlawful and unconstitutional actions, Garrett died on the floor of his own home.

49. During the course of the incident, Defendant Meeks yelled once that Garrett was going for his own gun, and twice that Garrett was going after Defendant Meeks' gun.

50. In fact, Garrett was unarmed the entire time and at no point did he have possession, custody, or control of Defendant Meeks' gun. The video evidence contradicts any and all claims that Garrett was attempting to access any of the Defendants' weapons.

51. Defendant Meeks' gun never left his holster. In fact, once inside Garrett's apartment, no other officer ever pulled their gun or even pointed it at Garrett. The declarations that Garrett was reaching for a gun were prophylactic utterances meant to justify the continued escalation of violence by the Defendants.

52. Immediately following the shooting—and before the defendants even learned Garrett's name—Defendant Officers acted in concert amongst themselves and their supervisors to cover up for their misconduct. This included, but is not limited to:

    a. Creating a false narrative to justify the unlawful entry;

    b. Creating a false narrative regarding the "threat" posed by Garrett;

    c. Instructing one another not to give statements;

    d. Agreeing to meet to with one another to get their stories straight prior to giving an official statement;

      e.  Instructing the involved officers to speak with various third parties prior to giving an official statement;

      f.  Using personal communication devices, such as cell phones, instead of radios to communicate with other officers so as not to leave a record; and

      g.  Authoring and approving false, inaccurate, and incomplete official reports.

53. According to the Pew Research Center, only about 27% percent of all law enforcement officers say they have EVER fired their service weapon while on the job. This was Defendant Beale's second police-involved shooting in three years.

54. Oklahoma has one of the highest rates of fatal police shootings, per capita, in the United States.

55. The City of Ada has a disproportionately high number of police-involved shootings and police-involved deaths. For example:

      h.  On 7 October 2019, Anthony Meely died being unlawfully arrested and restrained by Ada officers;

      i.  On 3 December 2019, Officer Mericle shot and killed a suspect while allegedly serving a felony warrant;

      j.  On 5 April 2020, a man was shot and killed in Ada by the Pontotoc County Sheriff's Office.

56. Ada Police Officers have shown an open, notorious, and reckless disregard for human life in their communications with one another and to the public at large, such as through social media. This includes, but is not limited to:

      k.  Threatening to shoot and kill protestors;

      l.  Posting and liking videos of police officers beating unarmed people; and

  m. Posting memes and other content that support a "shoot first" mentality.

57. The unjustified entry and use of excessive force to which Mr. Peterson was subjected was in furtherance of, and consistent with, policies, customs, and/or practices the Defendant City.

58. The moving force of Plaintiff's injuries were the unlawful policies and practices of the Ada Police Department including, but not limited to:

  n. Improperly training and supervising officers with respect to warrantless searches and/or arrests;

  o. Improperly training and supervising officers with respect to evaluating whether persons are or may be unable to comply due to intoxication, a mental health crisis, or substance abuse;

  p. Improperly training and supervising officers with respect to de-escalation;

  q. Improperly training and supervising officers with respect to the sanctity of human life;

  r. Improperly training and supervising officers who use force as retaliation against persons who are perceived by officers as bothersome, annoying, or previously noncompliant;

  s. Failing to adequately investigate and discipline officers who write false, inaccurate, or incomplete reports; and

  t. Failing to adequately investigate and discipline officers who violate the rights of citizens.

59. Defendant City knew or should have known that due to its clearly deficient training, supervision, and discipline unconstitutional conduct toward citizens was occurring;

despite this, Defendant City failed to take reasonable measures to alleviate the risks of harm.

60. Accordingly, Defendant City has created, tolerated, and/or maintained a longstanding and unconstitutional custom by failing to train, supervise, and discipline its officers.

61. As a direct and proximate result of the unlawful actions of the defendants, Garrett was injured, including physical injuries, pain and suffering, humiliation, embarrassment, fear, emotional trauma, mental anguish, the deprivation of his constitutional rights and dignity, loss of his life, lost time, and attorneys' fees.

## COUNT I: SECTION 1983

62. Plaintiff realleges the foregoing paragraphs as if fully set forth here.

63. By reason of the foregoing, illegally seizing Plaintiff, illegally entering Plaintiff's home, using excessive force, failing to intervene to prevent the deprivation of Garrett's rights, retaliating against Garrett for the exercise of his rights, and acting in concert to commit these constitutional violations, Defendants exhibited an unreasonable and deliberate indifference to Garrett's rights.

64. Defendants, without due process of law, violated Plaintiff's rights, privileges, and immunities guaranteed to every citizen of the United States, in violation of 42 U.S.C. § 1983, including, but not limited to, rights guaranteed by the First, Fourth, and Fourteenth Amendments of the United States Constitution.

65. Defendant Officers acted at all relevant times hereto willfully, wantonly, maliciously, and/or with reckless disregard to the consequences of their actions.

66. Moreover, actions of the Defendant Officers were compounded by efforts following the death of Garrett to insulate the Defendants from accountability. Defendants' actions

demonstrate a culture in and among the City of Ada Police Department that elevates officers such as the Defendants to a station of impunity. Garrett suffered the ultimate punishment by unfettered and emboldened actions resulting from Defendant City repeatedly failing to adequately investigate claims of misconduct, thereby allowing its officers to act with impunity and without fear of official or meaningful consequences.

67. The City of Ada decided to not discipline or reprimand the Defendant Officers for their unconstitutional conduct.

68. In so doing, Defendant City ratified the unconstitutional conduct of Defendant Officers.

69. As a direct and proximate result of these acts and omissions on the part of the City and Defendant Officers, Garrett was harmed.

## COUNT II: WRONGFUL DEATH

70. Plaintiff realleges the foregoing paragraphs as if fully set forth here.

71. Defendants are liable for the wrongful death of Garrett.

72. As a direct and proximate result of the Defendants' conduct, Plaintiff is entitled to recover damages, including but not limited to burial expenses, the decedent's mental pain and anguish, loss of parental consortium, pecuniary loss, and grief and loss of companionship.

## COUNT III: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

73. Plaintiff realleges the foregoing paragraphs as if fully set forth here.

74. The Defendant Officers engaged in extreme and outrageous conduct intentionally and recklessly causing severe emotional distress to Garrett.

75. By reason of the foregoing, the Defendant Officers are liable for the intentional infliction of emotional distress.

76. The Defendant City's officers, agents, and employees were responsible for the intentional infliction of emotional distress suffered by Garrett.

77. As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff was harmed.

### COUNT IV: NEGLIGENT HIRING/TRAINING/RETENTION

78. Plaintiff realleges the foregoing paragraphs as if fully set forth here.

79. Defendant City owed a duty of care to Garrett to prevent the conduct alleged, because under the same or similar circumstances, a reasonable, prudent, and careful person should have anticipated that injury to Garrett or to those in a like situation would probably result from the defendants' conduct.

80. Defendant Officers were unfit for their positions.

81. Defendant City knew or should have known through the exercise of reasonable diligence that the Defendant Officers they employed were dangerous and/or improperly trained.

82. Defendant City's negligence in screening, hiring, training, disciplining, and retaining these defendants proximately caused Garrett's death.

83. As a direct and proximate result of this conduct, Plaintiff was harmed.

### COUNT V: ASSAULT AND BATTERY

84. Plaintiff realleges the foregoing paragraphs as if fully set forth here.

85. At all times relevant to this Complaint, Defendants owed a duty to Garrett to meet the standard of care owed to persons who interact with the police.

86. The standard of care required, among other things, Defendants to refrain from creating unsafe environments, needlessly escalating force, and violating persons' rights.

87. Defendants negligently and/or wantonly breached and violated this standard of care or caused it to be violated.

88. Defendants' breach of their duty of care was the proximate cause of Garrett's serious and unnecessary injuries, including severe pain and suffering and death.

89. As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff was harmed.

## COUNT VI: OPEN RECORDS ACT VIOLATION

90. Plaintiff realleges the foregoing paragraphs as if fully set forth here.

91. On 6 December 2019, Mr. Peterson's estate sent an open records request to the City of Ada seeking:

    u. Any and all records, notes, memos, pictures, audio, body or dash camera footage, investigation reports, or any other documentary material related to the arrest and death of Mr. Jeffrey Garrett Peterson (D.O.B. 04/02/1990) occurring on September 21, 2019;

    v. Discipline records, policy records, and procedural records for: Marcus Beale, Ada Police Officer; Michael Meeks, Ada Police Officer; Phillip Vogt, Ada Police Officer; and Jussely Canada, Ada Police Officer; and

    w. Any and all training material and manuals used to train officers on how to respond and handle encounters with mentally and emotionally disturbed persons.

92. On 6 February 2020, a follow-up letter was sent to Defendant City as they had not yet responded to the request.

93. On February 12, 2020, the City finally responded to the request.

94. However, Defendant's response was not complete in that it failed to include: (1) witness statements; (2) the taser log; (3) detective's reports and notes; (4) radio dispatch audio; and (5) any training manuals or materials.

95. Plaintiff seeks declaratory and injunctive relief pursuant to 51 O.S.§ 24A.17 requiring the Defendant City to produce the requested open records.

## PRAYER FOR RELIEF

WHEREFORE the Plaintiff, CHRISTY BAILEY, as Administrator of the Estate of Jeffrey Peterson, demands judgment against the Defendants, CITY OF ADA and OFFICERS MARCUS BEALE, JUSSELY CANADA, MICHAEL MEEKS, and PHILLIP VOGT, for compensatory damages, punitive damages, declaratory and injunctive relief to remedy the violation of the costs of this action and attorneys' fees, and any such other and further relief as this Court deems equitable and just.

**PLAINTIFF DEMANDS TRIAL BY JURY.**

ATTORNEYS FOR PLAINTIFF

MATTINGLY & ROSELIUS, PLLC

By: _____
Jack Mattingly Jr., OBA No. 16136
215 E. Oak
P.O. Box 70
Seminole, OK 74818-0070
(405) 382-3333 Telephone
(405) 382-6303 Facsimile
jackjr@mroklaw.com

Jarrett Adams, NYS #5455712
Law Offices Of Jarrett Adams, PLLC
40 Fulton Street
Floor 23
New York, NY 10038

646-880-9707
Email: jadams@jarrettadamslaw.com
(Pro Hac Vice Pending)

Jeanette Samuels, IL #6313890
Shiller Preyar Jarard & Samuels
601 South California Avenue
Chicago, IL 60612
312-226-4590
Email: sam@spjslaw.com
(Pro Hac Vice Pending)

Ryan Kiesel, OBA #21254
3022 NW 39th St. #57532
Oklahoma City, OK 73157
405-303-1215
ryan@rkoklaw.com